UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO.: 9:17-cv-80393-ROSENBERG/HOPKINS

————————————————— x
                                                 :

CHARLES T. JOHNSON, on behalf of himself :
and others similarly situated,                  :
                                                 :

                   Plaintiff,       :
                                                 :

      vs.                             :
                                               :

NPAS SOLUTIONS, LLC,          :
                                               :

                 Defendant.     :
                                               :
————————————————— x

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

**Introduction**

After months of contested litigation, Plaintiff Charles T. Johnson and Defendant NPAS

Solutions, LLC ("NPAS Solutions") have reached an agreement to resolve this class action under the

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The TCPA makes it unlawful to

use an automatic telephone dialing system ("ATDS") to make a call to a cellular telephone number

without the prior express consent of the called party. At issue in this case are autodialed calls made

by NPAS Solutions intended for consumers alleged to owe health care-related debts, but that reached

parties different from those NPAS Solutions was trying to call. That is, Mr. Johnson alleged that

NPAS Solutions violated the TCPA by placing autodialed calls to wrong or reassigned cellular

telephone numbers assigned to persons different from those it was trying to reach and, as a result,

NPAS Solutions did not have the call recipients' prior express consent to make such calls. NPAS

Solutions denies any liability or that its practices violate the TCPA.

1

Mr. Johnson now seeks preliminary approval of the parties' class action settlement agreement ("Agreement").[1] Mr. Johnson and his counsel firmly believe the settlement—which calls for the creation of a $1.432 million, non-reversionary common fund from which participating class members will receive a pro-rata portion after deducting attorneys' fees, expenses, and notice and administration costs—is fair, reasonable, and adequate, and in the best interests of the class, particularly in light of the substantial risks and uncertainties of protracted litigation. Accordingly, Mr. Johnson respectfully requests that this Court enter the accompanying order granting preliminary approval of the settlement.

NPAS Solutions does not oppose this relief.

## Summary of the Settlement

**A.   Mr. Johnson alleges that NPAS Solutions violated the TCPA by placing autodialed calls to wrong or reassigned cellular telephone numbers. NPAS Solutions denies Mr. Johnson's allegations, and denies that it violated the TCPA.**

Congress enacted the TCPA in 1991 to address privacy and harassment concerns arising from certain telemarketing practices that escaped state invasion of privacy and nuisance statutes by operating interstate. *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 745 (2012).[2] Against this backdrop, "[t]here are two elements to an auto-dialer TCPA claim that a plaintiff must allege: (1) a call to a cellular telephone; (2) via an automatic telephone dialing system." *Murphy v. DCI Biologicals Orlando, LLC*, No. 6:12-CV-1459-ORL, 2013 WL 6865772, at *4 (M.D. Fla. Dec. 31, 2013) *aff'd*, 797 F.3d 1302 (11th Cir. 2015). "Prior express consent" of the called party is an affirmative defense to a TCPA action. *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316,

---

[1]   The Agreement and its exhibits are appended to the Declaration of Michael L. Greenwald, attached as Exhibit A.

[2]   Emphasis is added, and internal quotations and citations are omitted, unless otherwise noted.

1319 (S.D. Fla. 2012) *aff'd*, 755 F.3d 1265 (11th Cir. 2014). Such prior express consent is "consent that is clearly and unmistakably stated." *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) (quoting Black's Law Dictionary 323 (8th ed. 2004)).

Here, Mr. Johnson's claims are relatively straightforward: NPAS Solutions made autodialed calls to Mr. Johnson's cellular telephone number, even though he did not owe a debt that NPAS Solutions was trying to collect. Rather, NPAS Solutions made these calls while attempting to reach someone else—someone it alleges owes a health care-related debt to one of NPAS Solutions' clients. Discovery indicates that the person NPAS Solutions attempted to reach changed her phone number at some point after providing it to the medical facility that hired NPAS Solutions to collect its past-due accounts. This patient's cellular phone number was then reassigned to Mr. Johnson, who obtained a new cellular telephone number in early 2017. NPAS Solutions' dialer assigned the notation of "WN" to this phone number.

Significantly, Mr. Johnson's experience with NPAS Solutions is not unique. Discovery in this case shows that NPAS Solutions called approximately 180,000 different cellular telephone numbers after March 28, 2013, where its records also contain a "WN" notation. Of note, once NPAS Solutions places a "WN" notation on an account, it is NPAS Solutions' policy to immediately cease future calls to that phone number.

**B.      Despite facing significant obstacles to proving liability and attaining class certification, Mr. Johnson's litigation efforts resulted in a meaningful recovery for consumers who received unintended, autodialed calls from NPAS Solutions.**

While Mr. Johnson strongly believes in his claims, NPAS Solutions vehemently disputes that it violated the TCPA. To that end, NPAS Solutions raised a host of defenses to Mr. Johnson's claims, including:

- The Federal Communications Commission's July 10, 2015 Declaratory Ruling and Order ("2015 FCC Order") included a one-call safe harbor for calls made to reassigned cellular

telephone numbers, like those at issue here. Because of this safe harbor, NPAS Solutions may have a viable defense to many of the calls it made to class members;

- NPAS Solutions also contended that it maintains robust safeguards to ensure compliance with the TCPA. While NPAS Solutions vehemently disputes any liability, to the extent any violations did occur, NPAS Solutions would argue that any violation of the TCPA was unintentional and would not support increased statutory damages; and

- Mr. Johnson faced significant risks in obtaining class certification. In particular, because NPAS Solutions necessarily does not have the name and address of each person it called at a potentially wrong number (but does have the cellular telephone numbers it dialed), NPAS Solutions would argue that the class is not ascertainable. NPAS Solutions also would argue that individualized issues predominate (such as whether a call truly reached a wrong number or whether the call recipient had consented to being called by NPAS Solutions), and that a litigation class should not be certified for a host of additional reasons. Indeed, several courts in this Circuit have refused to certify TCPA class actions, making the likelihood of certification uncertain. *See, e.g.*, *Shamblin v. Obama for America*, No. 8:13-cv-2428-T-33TBM, 2015 WL 1909765, at *8 (M.D. Fla. Apr. 27, 2015); *Balthazor v. Central Credit Servs., Inc.*, No. 07-61822, 2012 WL 6725872, at *3-4 (S.D. Fla. Dec. 27, 2012).

After months of discovery and motion practice, and with the benefit of a September 15, 2017 mediation before the Honorable Diane M. Welsh (Ret.) of JAMS in similar TCPA class actions against two debt collection companies with the same ultimate corporate parent as NPAS Solutions, *see* Ex. A at ¶ 27, the parties ultimately reached an agreement to resolve this matter.

**C.    The settlement provides for a non-reversionary common fund of $1.432 million and direct mail notice to all known class members.**

The Agreement defines a settlement class under Rule 23(b)(3) comprised of:

All persons in the United States who (a) received calls from NPAS Solutions, LLC between March 28, 2013 and the date of preliminary approval that (b) were directed to a phone number assigned to a cellular telephone service, (c) for which NPAS Solutions' records contain a "WN" designation, and (d) were placed using an automatic telephone dialing system.

Participating class members will receive a pro-rata share of the $1.432 million settlement fund, after expenses are deducted. Thus, the common fund equates to approximately $8 for each

4

potential class member[3]—a result that compares favorably to similar TCPA settlements. And, while the exact per-class-member recovery will not be known until class members are provided with an opportunity to submit claims, given historical claims rates in TCPA cases (approximately 4-8%), each participating class member is likely to receive between $40 and $80, after deducting notice and administration costs, attorneys' fees and expenses, and an incentive award for Mr. Johnson. In exchange, class members will release their claims arising out of NPAS Solutions' use of an ATDS to place calls to class members' cellular telephones during the class period.

Subject to Court approval, the costs of notice and administration, an award of attorneys' fees and expenses, and an incentive award for Mr. Johnson also will be deducted from the $1.432 million fund. To that end, NPAS Solutions agrees not to oppose an incentive award to Mr. Johnson of $6,000. Mr. Johnson also will seek the reimbursement of class counsel's costs and expenses not to exceed $6,000, and an award of attorneys' fees not to exceed 30 percent of the common fund. Of note, NPAS Solutions has not agreed to these attorneys' fees, costs, and expenses and may oppose the requests in whole or in part. Moreover, this Court's approval of such fees and expenses is not a condition of the settlement.

The Agreement also requires a robust notice program, including direct mail notice to each class member who can be identified through NPAS Solutions' call records.

---

[3]      This amount is calculated by dividing the total settlement fund ($1.432 million) by the number of unique cellular telephone numbers containing a "WN" code (179,642). Dividing the number of potential class members by the gross settlement fund allows the parties and this Court to compare this settlement to similar TCPA class actions. *See* Argument, Section B.4, *infra*. To be clear, however, the expected per-claimant recovery will greatly exceed this amount, and is expected to be between $40 and $80 per claimant, depending on the number of class members who submit claims.

## Argument

**A.     The proposed settlement class satisfies the requirements of Rule 23 and should be certified for settlement purposes.**

To certify the proposed class, Mr. Johnson must satisfy each of the four requirements of Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation, as well as Rule 23(b)(3). *See Manno v. Healthcare Revenue Recovery Grp.*, 289 F.R.D. 674, 683-84 (S.D. Fla. 2013) (certifying TCPA class action). And particularly because certification is sought in the context of a settlement, the requirements of Rule 23(a) and 23(b)(3) are readily satisfied. *See*, *e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

Here, Mr. Johnson seeks to certify the following class for settlement purposes:

> All persons in the United States who (a) received calls from NPAS Solutions, LLC between March 28, 2013 and the date of preliminary approval that (b) were directed to a phone number assigned to a cellular telephone service, (c) for which NPAS Solutions' records contain a "WN" designation, and (d) were placed using an automatic telephone dialing system.

### 1.     The class is so numerous that joinder is impracticable.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement of Rule 23(a) is satisfied by the impracticability of joinder, which is generally presumed if a putative class amounts to more than forty individuals." *Holman v. Student Loan Xpress, Inc.*, No. 9:08-cv-305-T-23MAP, 2009 WL 4015573, at *2 (M.D. Fla. Nov. 19, 2009); *see also Jones v. Firestone Tire & Rubber Co., Inc.*, 977 F.2d 527, 534 (11th Cir. 1992). Here, because the class contains approximately 180,000 members throughout the United States, numerosity is satisfied. *See Gevaerts v. TD Bank, N.A.*, No.

11:14-cv-20744-RLR, 2015 WL 12533121, at *8 (S.D. Fla. Aug. 3, 2015) (Rosenberg, J.) ("Here, the numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of more than a thousand class members, and joinder of all such persons is impracticable.").

<strong>2.    Questions of law and fact are common to the class.</strong>

"Commonality is satisfied by the existence of at least one issue affecting all or a significant number of proposed class members." *Holman*, 2009 WL 4015573, at *2. "To meet the commonality requirement, the moving party must demonstrate that the class action involves issues susceptible to class-wide proof." *Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 659 (M.D. Fla. 2015) (certifying class action) (citing *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009)). Notably, "Rule 23 does not require that all the questions of law and fact raised by the dispute be common." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986).

Here, class members' claims stem from the same circumstances, in that NPAS Solutions made calls to class members' cellular telephones, using an ATDS, which are alleged to be in violation of the TCPA in that NPAS Solutions was calling wrong numbers. *See James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) (granting preliminary approval to wrong number TCPA settlement); *see also Gehrich v. Chase Bank USA, N.A.*, Case No. 12 C 5510, 2016 WL 806549, at *4 (N.D. Ill. Mar. 2, 2016) ("The proposed class also satisfies commonality and typicality. Each class member suffered roughly the same alleged injury: receipt of at least one phone call or text message from Chase to her cell phone.").

Thus, common questions include whether NPAS Solutions used an ATDS as defined by the TCPA to place the calls at issue, and whether NPAS Solutions is liable for calls made to allegedly wrong or reassigned numbers. Accordingly, the commonality requirement is satisfied. *See James*, 2016 WL 6908118, at *1 ("Second, a common question of fact, whether Chase auto-dialed each person's phone, unites the class."); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-1290, 2013 WL

7

444619, at *2 (S.D. Cal. Feb. 5, 2013) ("Here, the proposed class members' claims stem from the same factual circumstances, in that the calls were made by Wells Fargo to class members . . . using auto-dialing equipment or with a prerecorded voice message. There are also several common questions of law, including: (1) whether Wells Fargo negligently violated the TCPA; (2) whether Wells Fargo willfully or knowingly violated the TCPA; and (3) whether Wells Fargo had 'prior express consent' for the calls. Accordingly, the commonality requirement is met."); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-CV-01413-W-AJB, 2008 WL 4155361, at *6 (S.D. Cal. Sept. 5, 2008) ("In my judgment, the commonality requirement is met here. The putative class claims stem from the same alleged conduct, *i.e.,* NCO allegedly calling consumers on their cellular telephones, or other wireless devices, without 'prior express consent,' using an 'automatic telephone dialing system' or an 'artificial or prerecorded voice.' The putative class claims are legally and factually similar.").

### 3.   The claims asserted by Mr. Johnson are typical of the claims of class members.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Here, NPAS Solutions called Mr. Johnson's cellular telephone number, like the other members of the class, while intending to reach someone else. Because NPAS Solutions' call records show a "WN" designation for Mr. Johnson's cellular telephone number, Mr. Johnson unquestionably is a member of the class, and he possesses the same interests, asserts identical claims, and seeks identical relief on behalf of members of the class. *Gehrich*, 2016 WL 806549, at *4 ("All class members allegedly received calls or text messages from Chase in violation of the TCPA, and that is enough to satisfy the typicality requirement.").

### 4.   Mr. Johnson and his counsel will continue to fairly and adequately protect the interests of the class.

Next, the Court must determine if "the representative parties will fairly and adequately

protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[C]lass counsel and the class representatives are adequate representatives of the class if (1) plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and (2) the plaintiffs lack interests antagonistic to those of the rest of the class." *Holman*, 2009 WL 4015573, at *2.

As set forth above, Mr. Johnson's claims are aligned with the claims of the class, and he therefore has every incentive to vigorously pursue class members' claims, as he has done to date. To that end, Mr. Johnson has been actively involved in this litigation since its inception.

In addition, Mr. Johnson retained the services of Greenwald Davidson Radbil PLLC, which has significant experience representing plaintiffs in nationwide TCPA class actions. Mr. Johnson's counsel therefore is well-equipped to handle this matter, as their work in this case demonstrates. *See* Ex. A at ¶¶ 7-24; *Roundtree*, 304 F.R.D at 661 ("As set forth in greater detail in her motion, Greenwald has been appointed as class counsel in a number of actions and thus provides great experience in representing plaintiffs in consumer class actions.").

### 5.     Common questions predominate over any individual issues.

In addition to meeting the four requirements of Rule 23(a) and the requirements of Rule 23(g), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). Here, the settlement class satisfies Rule 23(b)(3).

The predominance factor "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

Here, the central legal issue before this Court is whether NPAS Solutions' automated calls to class members violated the TCPA. Additional common questions include whether NPAS Solutions

used an ATDS as defined by the TCPA, and whether NPAS Solutions is liable for alleged "wrong number" calls—that is, whether NPAS Solutions violated the TCPA by placing autodialed calls intended for debtors it was trying to reach but whose phone numbers were potentially reassigned to different persons. For settlement purposes, these common questions predominate over any individual issues. *James*, 2016 WL 6908118, at *1 ("Also, the class satisfies Rule 23(b)(3)'s predominance requirement. Class-wide proof can answer the predominant questions (whether Chase auto-dialed each person and whether each call violates the TCPA)."); *see also Malta*, 2013 WL 444619, at *4 ("The central inquiry is whether Wells Fargo violated the TCPA by making calls to the class members. Accordingly, the predominance requirement is met."). Further, predominance is buttressed because each class member "is eligible to receive an identical pro-rata share of the settlement fund, suggesting that there is no need for an individualized determination of the share each class member is entitled to." *Lo v. Oxnard European Motors, LLC*, No. 11-1009, 2011 WL 6300050, at *3 (S.D. Cal. Dec. 15, 2011).

> **6.    Class treatment is superior to other available methods for the fair and efficient adjudication of the claims here.**

Because the claims in this case all arise from the same conduct on the part of NPAS Solutions, this class action settlement is the superior vehicle for determining the rights of absent class members. Fed. R. Civ. P. 23(b)(3); *see Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (certifying TCPA class action, and finding that, "[g]iven the large number of purported members in this suit and the similarity of their claims, disposition by class action is an efficient use of judicial resources. Moreover, the relatively small potential recovery in individual actions ($500 in the absence of a finding of willfulness) and reduced likelihood that plaintiffs will bring suit also weighs in favor of class resolution."); *St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) ("Because the

statutory damages available to each individual class member are small—at most $1500 per violation—it is unlikely that the class members have interest in individually controlling the prosecution of separate actions. This action involves thousands of plaintiffs, each with a relatively small, nearly identical claim, who might not otherwise seek or obtain relief absent a class action. . . . All in all, a class action is superior to other methods of adjudicating this controversy.").

Indeed, resolving the claims of nearly 180,000 persons through this one settlement class is superior to the potential for thousands of duplicative lawsuits, and the high likelihood that additional thousands of meritorious claims will go unredressed.

**B.      This Court should preliminarily approve the settlement as "fair, reasonable, and adequate" under Rule 23(e).**

Rule 23(e) requires that the Court make a preliminary determination of fairness:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *see also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002).

"The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the 'range of reasonableness.'" *Gevaerts*, 2015 WL 12533121, at *6. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Id.* When evaluating the fairness of a class action settlement, "courts are guided by the 'strong judicial policy favoring settlement as well as by the realization that compromise is the

essence of settlement.'" *Id.* at *5 (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). "The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain." *Gevaerts*, 2015 WL 12533121, at *6 (citing, *e.g.*, *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.")).

While a full fairness inquiry is unnecessary at the preliminary approval stage, the Eleventh Circuit has identified six factors to be considered in analyzing the fairness of a class action settlement under Rule 23(e): "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986; *see also Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994). Each relevant factor supports the conclusion that the settlement here is fundamentally fair, adequate, and reasonable, and should be preliminarily approved.

### 1. The settlement was the product of negotiations by experienced counsel, and was informed by mediation in a similar TCPA class action.

The parties' arm's-length settlement negotiations, which were greatly informed by mediation in a similar TCPA matter, demonstrate the fairness of the settlement, and that the settlement is not a product of fraud or collusion. In addition, the parties' settlement discussions occurred after written discovery, after the Court denied NPAS Solutions' motion to strike Mr. Johnson's class action allegations, and after Mr. Johnson served his expert report. As a result, the parties—and counsel with extensive experience in TCPA litigation—were able to properly assess the strengths and weaknesses

of their positions and evaluate the fairness of the settlement.

**2.    The complexity, expense and likely duration of the litigation favors preliminary approval of the settlement.**

By their very nature, because of the uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly true in class action suits . . . which frequently present serious problems of management and expense").

This case was no different. The parties engaged in written discovery and motion practice, including NPAS Solutions' motion to strike Mr. Johnson's class allegations. Significant motion practice lay ahead as well, including competing motions for summary judgment and Mr. Johnson's motion for class certification. Given the considerable work already performed—and the work left to perform, including any appeals—settlement was warranted. *See, e.g., Bennett*, 96 F.R.D. at 349-50 (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers ... to the vagaries of a trial").

**3.    The factual record is sufficiently developed to enable Mr. Johnson and class counsel to make a reasoned judgment concerning the settlement.**

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating.  *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

Here, the litigation has been ongoing since March 2017. During that time, Mr. Johnson filed

an amended complaint, and NPAS Solutions moved to strike his class allegations. The parties also engaged in significant written discovery, focused both on Mr. Johnson's individual claims, and on the claims of absent class members. Moreover, Mr. Johnson served the report of his expert witness, which focused on the ability to identify class members from NPAS Solutions' call records. The settlement was, therefore, consummated when the parties had a good view towards the strengths and weaknesses of their respective positions. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

### 4. The probability of Mr. Johnson's success on the merits and the range of possible recovery favor preliminary approval.

The Court must also consider "the likelihood and extent of any recovery from the defendants absent ... settlement." *In re Domestic Air Transp.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise.").  In determining whether a settlement is fair in light of the potential range of recovery, courts are guided by the important maxim that the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d at 1350.  This is because a settlement must be evaluated in light of the attendant risks with litigation.  *Id.*  These factors also weigh in favor of the settlement here.

While Mr. Johnson believes strongly in his claims, by any objective assessment he faced hurdles to obtaining class-wide relief. Among the obstacles to prevailing on his claims and those of the class:

- The pendency of the consolidated appeal of the 2015 FCC Order, where an adverse decision (if adopted by the Eleventh Circuit) could eliminate, or significantly curtail, the viability of wrong number TCPA claims, like those asserted by Mr. Johnson and absent class members;

- The one-call safe harbor for calls made to reassigned cellular telephone numbers set forth in the 2015 FCC Order provided NPAS Solutions with a viable defense to many of the calls it made to absent class members;

- Mr. Johnson faced significant risks in obtaining class certification, including hurdles related to the ascertainability of the class and the commonality and predominance requirements of Rule 23. *See, e.g.*, *Shamblin*, 2015 WL 1909765; *Balthazor*, 2012 WL 6725872; and

- Even had Mr. Johnson prevailed on the merits, NPAS Solutions would assert that its robust TCPA safeguards made the prospect for the recovery of treble damages unlikely. Moreover, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards on due process grounds. *See, e.g.*, *Aliano v. Joe Caputo & Sons—Algonquin, Inc.*, No. 09 C 910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature.").

Despite these obstacles, Mr. Johnson negotiated a settlement that compares favorably to similar TCPA class action settlements. As noted above, dividing the settlement fund of $1.432 million by 179,642 (the maximum number of potential class members) amounts to just under $8 per person. In contrast, in *Picchi v. World Fin. Network Bank*, Case No. 11-CV-61797-CIV-Altonaga/O'Sullivan (S.D. Fla. Jan. 30, 2015), final approval was granted in a similar wrong number TCPA class action for $2.63 per person (settling claims of 3 million potential class members for $7.9 million)—less than one-third the amount class members will receive here.

Indeed, the settlement provides substantial, immediate cash relief to the class. From the $1.432 million settlement fund, each class member who timely submits a claim will receive an equal share after expenses are deducted. Thus, and assuming administration costs of $250,000, an incentive award of $6,000 for Mr. Johnson, and an award of attorneys' fees of 30 percent of the common fund plus the reimbursement of litigation expenses not to exceed $6,000, if 5 percent of

class members submit claims—a typical claims rate for a TCPA class action—each person should receive approximately $82.40, an amount that compares favorably to TCPA settlements generally. *See James*, 2016 WL 6908118, at *2 ("Discounting the statutory award by the probability that Chase successfully defends some class members' claims, a recovery of $50 per person fairly resolves this action.") (citing *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F.Supp.3d 781, 789 (N.D. Ill. 2015) (Holderman, J.) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action)).

Per-claimant recoveries in other TCPA class actions are similar. *See, e.g.*, *Cross v. Wells Fargo Bank, N.A.*, No. 2:15-cv-01270-RWS, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) (fund amounting to $4.75 per class member); *Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95 per class member); *Prater v. Medicredit, Inc.*, No. 14-00159, 2015 WL 8331602 (E.D. Mo. Dec. 7, 2015) (just under $10 per class member); *Rose v. Bank of Am. Corp.*, Nos. 11 C 2390 & 12 C 4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (approving TCPA class settlement where claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 WL 1309352 (N.D. Cal. Mar. 31, 2014) (less than $50 per TCPA claimant); *Arthur v. Sallie Mae, Inc.*, 10–CV198–JLR, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012) ($20-$40 per participating class member); *Adams v. Allianceone Receivables Mgmt.*, *Inc.*, No. 3:08-cv-00248-JAH-WVG, ECF No. 113 (S.D. Cal. Apr. 23, 2012) (approximately $1.48 per class member).[4]

---

[4]     *See also Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 WL 2286076, at *4 (M.D. La. May 23, 2013) (approving settlement that provides up to $15 cash payment for TCPA violation); *In re Jiffy Lube Int'l, Inc.*, No. 11-02261 (S.D. Cal.) (class members entitled to vouchers for services valued at $17.29 or a cash payment of $12.97); *Garret v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, ECF No. 74 (N.D. Ill.) ($28.13 recovery per claimant); *Agne v. Papa John's Int'l, et al.*, No. 2:10-cv-01139, ECF No. 389 (W.D. Wash.) ($50 recovery plus $13 merchandise per claimant);

In sum, the settlement here represents an objectively excellent recovery for the class. *See Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—substantially less than the expected recovery here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

Thus, given the significant risks in continued litigation in light of the amount recovered for class members, this settlement is fair, reasonable, and adequate.

### 5.   The opinions of Mr. Johnson and class counsel favor preliminary approval.

As noted above, class counsel is experienced in class action litigation, having litigated consumer protection cases on a class-wide basis in many jurisdictions, including those under the TCPA. Mr. Johnson and class counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of class members.

Further, a strong initial presumption of fairness should attach to the proposed settlement because it was reached by experienced counsel after arm's-length negotiations. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); *Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.").

---

*Clark v. Payless ShoeSource, Inc.*, No. 2:09-cv-00915, ECF Nos. 61 at 3, 72 (W.D. Wash.) ($10 merchandise certificate per claimant); *Cubbage v. The Talbots, Inc. et al.*, No. 2:09-cv-00911, ECF No. 114 (W.D. Wash.) ($40 or $80 merchandise certificate per claimant).

For all of the foregoing reasons, this Court should preliminarily approve the settlement.

**C.     The proposed plan of notice satisfies the requirements of Rule 23 and due process.**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." *See* Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). In short, "[t]he adequacy of class notice is measured by reasonableness," and "[t]he notice must provide the class members with information reasonably necessary to make a decision whether to remain a class member and be bound by the final judgment or opt out of the action." *Roundtree v. Bush Ross, P.A.*, No. 8:14-cv-357-T-37AEP, 2015 WL 5559461, at *1 (M.D. Fla. Sept. 18, 2015) (quoting *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011)).

Here, the parties have agreed to a robust notice program to be administered by a well-regarded third-party class administrator—KCC LLC ("KCC")—with significant experience in the administration of TCPA class actions. First, NPAS Solutions will provide to KCC a listing of all cellular telephone numbers it dialed that contain a "WN" designation. KCC will then use one or more third-party vendors to perform reverse look-ups of these phone numbers to obtain class members' names and addresses, which will be updated through the National Change of Address system, which updates addresses for all people who moved during the previous four years and filed a change of address with the U.S. Postal Service. Each person identified through this process will be sent, via U.S. mail, a postcard notice with a detachable claim form, in the forms attached to the Agreement as Exhibits 1 and 3. *See James*, 2016 WL 6908118, at *2 (approving materially identical notice plan in wrong number TCPA class action).

Separately, KCC will establish a dedicated settlement website through which class members can review relevant pleadings, review the question-and-answer notice (attached as Exhibit 5 to the Agreement), and submit claims.

In addition, KCC will establish a toll-free phone number, 866-650-4059, through which class members can request additional information, have questions about the settlement answered, and submit claims. Finally, summary notice of the settlement, containing similar information as the postcard notice, will be published in a national edition of USA Today.

This notice plan complies with Rule 23 and due process because, among other things, it informs class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objection and exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding class counsel's request for an award of attorneys' fees and expenses; (6) the procedure for submitting claims to receive settlement benefits; and (7) how to make inquiries and obtain additional information. Fed. R. Civ. P. 23(c)(2)(B); *Roundtree*, 2015 WL 5559461, at *1 ("The class notice provides reasonably adequate information about the nature of the action and the class settlement, and provides sufficient details for class members to determine whether to remain in the class or opt out. Accordingly, the form and content of the class notice are approved.").

In short, this notice plan ensures that class members' due process rights are amply protected and should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A).

**D.     This Court should schedule a final fairness hearing.**

The last step in the settlement approval process is a final fairness hearing at which this Court may hear all evidence and argument necessary to make its final settlement evaluation. Fed. R. Civ. P.

23(e)(2). Proponents of the settlement may offer argument in support of final approval. In addition, class members may be heard at this hearing. The Court will determine after the final fairness hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e).

### Conclusion

Mr. Johnson respectfully requests that this Court preliminarily approve the settlement and enter the proposed order submitted concurrently, appoint him as class representative, and appoint Greenwald Davidson Radbil PLLC as class counsel.

### Local Rule 7.1(a)(3) Certification

Counsel for Mr. Johnson conferred with counsel for NPAS Solutions, and NPAS Solutions does not oppose the requested relief.


Dated: November 29, 2017                    */s/ Michael L. Greenwald*
                                            Michael L. Greenwald
                                            James L. Davidson
                                            Jesse S. Johnson
                                            GREENWALD DAVIDSON RADBIL PLLC
                                            5550 Glades Road, Suite 500
                                            Boca Raton, FL 33431
                                            Telephone: 561.826.5477
                                            Fax: 561.961.5684
                                            mgreenwald@gdrlawfirm.com
                                            jdavidson@gdrlawfirm.com
                                            jjohnson@gdrlawfirm.com

                                            Aaron D. Radbil
                                            GREENWALD DAVIDSON RADBIL PLLC
                                            106 E. 6th Street, Suite 913
                                            Austin, TX 78701
                                            Telephone:  512.322.3912
                                            aradbil@gdrlawfirm.com

                                            Counsel for Mr. Johnson and the class

**Certificate of Service**

I certify that a copy of the foregoing was electronically filed on November 29, 2017, via the

Court Clerk's CM/ECF system, which will provide notice to all counsel of record:

Maura K. Monaghan
Jacob W. Stahl
DEBEVOISE & PLIMPTON LLP

Martin B. Goldberg
Alan D. Lash
Lorelei J. Van Wey
Michael L. Ehren
LASH & GOLDBERG LLP

Counsel for Defendant

/s/ Michael L. Greenwald
Michael L. Greenwald