UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO. 9:17-CV-80393-ROSENBERG/HOPKINS

CHARLES T. JOHNSON, individually and on
behalf of all others similarly situated,

                    Plaintiff,

      v.

NPAS SOLUTIONS, LLC,

                    Defendant.

## OBJECTION TO PROPOSED SETTLEMENT AND
## NOTICE OF INTENT TO APPEAR

## I.  NOTICE OF INTENT TO APPEAR AND ARGUE

TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 7, 2018 at 11:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 2 of the above-entitled court located at 701 Clematis Street, West Palm Beach, Florida, 33401, class member Jenna Dickenson ("Dickenson" or "Objector"), by and through her counsel, intends to appear and offer argument at the final approval hearing.

1

## II.  PROOF OF CLAIM

Objector Dickenson is a member of the Settlement Class as set forth in the Settlement Agreement, DE37-1:13, § 2.31.  She timely submitted a claim form and was assigned Claim ID NPJ-10017849-9.  *See Declaration of Jenna Dickenson* filed herewith.

## III.  INTRODUCTION

In approving a settlement, a "[d]istrict [c]ourt must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); see also Fed. R. Civ. P. 23(e)(2). The Court must "undertake an analysis of the facts and the law relevant to the proposed compromise" and "support [its] conclusions by memorandum opinion or otherwise in the record." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).  The burden of proving the fairness of a settlement rests squarely on its proponents.  *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983).  *See* Herbert B. Newberg & Alba Conte, 2 Newberg on Class Actions § 11.42 (3d ed. 1992); Moore's Federal Practice § 23.80 [4] (2d ed. 1987); *see also Williams v. Ryan*, 78 F.R.D. 364, 369 (1978).

## IV.  ARGUMENT

### A.    The Court Cannot Presently Approve the Contemplated Attorneys' Fees

Class counsel mention that they will be requesting 30% of the $1,432,000 gross common fund.[1]  But counsel have yet to file papers setting forth the legal basis and factual support for the fee application.  Under the Order Preliminarily Approving Class Settlement, the motion for attorneys' fees is not due until April 6, 2018[2], which is

---

[1] Notice to Class Members at p. 2

[2] *See* DE38 at p. 8 ("Submissions by the Parties, including memoranda in support of the proposed settlement, responses to any objections, petitions for attorneys' fees and reimbursement of costs and expenses by Class Counsel, shall be filed with the Court no later than 30 days prior to the Final Approval Hearing, i.e., no later than April 6, 2018.")

eighteen days *after* the March 19, 2018 deadline for filing objections to the proposed settlement and fee application set forth in the same Order.[3]  Here, both Rule 23 and fundamental due process have been violated because the Class Notice requires that objections must be submitted before the motions for settlement approval and attorneys' fees are due.

Rule 23 specifically requires the district court, before approving a class-action settlement, to "'direct notice in a reasonable manner to all class members who would be bound by the proposal,'" such that "'[a]ny class member may object to the proposal if it requires court approval under this subdivision (e).'" *Juris v. Inamed Corp.,* 685 F. 3d 1294, 1307 n.10 (11th Cir. 2012); *see In re CP Ships Ltd. Securities Litigation,* 578 F. 3d 1306, 1317 (11th Cir. 2009) (same); *In re Baby Prods. Antitrust Litig.,* 708 F.3d 163, 181 (3d Cir. 2013) (same); *Sullivan v. DB Investments, Inc.,* 667 F. 3d 273, 338 n.8 (3d Cir. 2011) (quoting Fed. R. Civ. P. 23(e)); *UAW v. General Motors Corp.,* 497 F. 3d 615, 629 (6th Cir. 2007) (same); *Guzman v. Consumer Law Group,* No. 1:2001-cv-00187-JRH, slip op. at pp. 1, 4 (S.D. Ga. May 11, 2016) (same).

Rule 23(h) similarly requires that "notice of motions requesting attorneys' fees for class counsel must be 'directed to class members in a reasonable manner.'" *In re Volkswagen and Audi Warranty Extension,* 692 F.3d 4, 10 n.5 (1st Cir. 2012) (quoting Fed. R. Civ. P. 23(h)); *see Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (quoting Rule 23(h)); *In re Enron Corp. Securities,* 586 F. Supp. 2d 732, 744 (S.D. Tex. 2008) (same); *In re Excess Value Ins. Coverage Litig.,* 598 F. Supp. 2d 380, 391 (S.D.N.Y. 2005) (same).  Honoring these provisions is critical to realizing the due

---

[3] Order Preliminarily Approving Class Settlement, DE38 at p. 4 ["Any class member who intends to object to the fairness of this settlement must file a written objection with the Court within 60 days after the Notice Deadline (105 days after the Court's entry of this order), *i.e.*, no later than March 19, 2018."]

process of law that the Fifth Amendment protects.  *See Eisen v. Carlisle & Jacquelin,* 417 U. S. 156, 174-75 (1974) ("notice and an opportunity to be heard [are] fundamental requisites of the constitutional guarantee of procedural due process"); *Hansberry v. Lee,* 311 US 32, 40 (1940) ("notice and opportunity to be heard are requisite to the due process which the Constitution prescribes").

Rule 23(h) thus requires Class Counsel to file their fee motion – and direct it to interested class members – well before the time to opt-out or object.  The 2003 Advisory Committee Note to Rule 23(h) emphasizes: "In setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion."  As the Ninth Circuit explained in *In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988 993-94 (9th Cir. 2010), Rule 23(h) "requires that any class member be allowed an opportunity to object to the fee motion itself, not merely to the preliminary notice that such a motion will be filed."  The court justified this requirement as essential not only to protecting class members' rights, but also to ensuring district courts have adequate information to discharge their fiduciary duty to the class:

> Allowing class members an opportunity thoroughly to examine counsel's fee motion...is essential for the protection of the rights of class members. It also ensures that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee.

*Mercury Interactive,* 618 F.3d at 994.  The Seventh Circuit agrees, explaining that Class members forced to base their objection solely on a preliminary notice have no way of discerning "the rationale that would be offered" later, in counsel's motion *Id* at 638.and that Rule 23(h):

> requires that a claim for attorneys' fees in a class action be made by motion, and "notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."  Class counsel did not file the attorneys' fee motion until after the deadline set by

4

the court for objections to the settlement had expired.   That violated the rule.

*Redman,* 768 F.3d at 637-38.  The court further observed that "[t]here was no excuse for permitting so irregular, indeed unlawful, a procedure." *Id*. at 638.   *See also In re National Football League Players Concussion Injury Litig.,* 821 F.3d 410, 446 (3d Cir. 2016) (dictum) ("We have little trouble agreeing that Rule 23(h) is violated in those circumstances."); *Lawler v. Johnson*, __So. 3d.__ No. 1151347, 2017 WL 4707517, at *7–9 (Ala. Oct. 20, 2017) (finding *Mercury* and *Redman* applicable to Alabama class actions, despite lack of state analogue to Rule 23(h), on basic due process grounds).

Requiring objections to be filed before the motions for final settlement and approval and attorneys' fees are due violates the notice provisions of Rule 23 and deprives class members of their fundamental right to due process of law.   *See* U.S. Const. amend. V (guaranteeing due process of law); Fed. R. Civ. P. 23(e), (h) (requiring reasonable notice be directed to class members before the court may approve a class-action settlement or attorneys' fee award).   *See also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an *opportunity to present their objections*." (emphasis added)).

Given the due process interests at stake, the correct remedy for this violation is supplemental notice to the Class, and an opportunity for class members to view and comment on the fee request.   *Allen v. Bedolla,* 787 F.3d 1218, 1225-26 (9th Cir. 2015) (reversing where district court had failed "to set the deadline for objections to counsel's fee request on a date after the motion and documents supporting it have been filed" and directing that "[u]pon remand, the district court must give the entire class— and not just the Objectors-Appellants here—the opportunity to review class counsel's completed fee

motion and to submit objections if they so choose.to,"); *see also Dickerson v. Cable Commc's, Inc.*, No. 3:12-CV-00012-PK, 2013 WL 6178460, at *2 (D. Or. Nov. 25, 2013) (preemptively addressing scheduling violation, district court continued final approval and ordered supplemental notice to all class members "notifying them that they have the right to object to counsel's fee request, and informing them where they could view the documents supporting counsel's fee request.").

**B.    The Named Plaintiff Has Not Shown that the Proposed Settlement is Fair, Reasonable, and Adequate**

The proposed $1.432 million settlement represents approximately $8.00 per class member.[4]  On the facts available, a proper analysis suggests the proposed settlement's recovery is a fraction of what the class's facially valid claims are worth.  Here, "NPAS solutions called approximately 180,000 different cellular telephone numbers after March 28, 2013, where its records also contain a "WN" notation."[5]  Even assuming that only a single call was placed to each of those numbers, and also that the calls were not "willful or knowing" under the Act, the Class's damages would equate to $90 million. That is the minimum available recovery here.  If it can be established that defendant possessed the requisite scienter in making the calls, or if it can be established that each class member received three or more negligent calls, the settlement value of this case jumps to $270 million.

The analysis must start with the best case for plaintiffs, *see, e.g., Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 283 (7th Cir. 2002)*,* and other circuits concur that a settlement cannot be approved if it falls outside the "range of reasonableness of the

---

[4] Class Counsel estimate in the Notice to Class Members that each claimant will "receive between $40 and $80, depending on the number of class members who participate." Objector believes that statement to be overly optimistic.

[5] *Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement* at 3.

settlement fund in light of the best possible recovery."[6]  The court must also consider the possibility of an intermediate recovery, of something less than $1,500 per call.  In a recent TCPA case to go to trial, for example, the class obtained a judgment of only $1,200 per call – not the full $1,500 that they might have received.  *Krakauer v. Dish Network L.L.C.*, No. 1:14-CV-333, 2017 WL 2242952 (M.D.N.C. May 22, 2017).  In *Krakauer,* the jury returned a verdict of only $400 per call, having been instructed that the $500 statutory damages were an upper cap on liability. *See Krakauer*, 2017 WL 2242952, at *2 (citing *Krakauer* Docket Entry No. 292 (Jan. 19, 2017 verdict sheet)). The $400 figure was then trebled "to deter Dish and to give suitable weight to the seriousness and scope of the violations Dish committed," involving "over 50,000 connected calls to over 18,000 private individuals."  *Krakauer*, 2017 WL 2242952, at *13.[7]  The district court observed that the TCPA's statutory damages are "'specifically designed to be disproportional to the harm suffered'" both to deter violations and to encourage enforcement.  *Id*., (quoting *Hannabury v. Hilton Grand Vacations Co.*, 174 F.

---

[6] *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974); *accord, e.g., Wal-Mart Stores, Inc. v. Visa USA, Inc.,* 396 F.3d 96, 117, 119 (2d Cir. 2005); *In re Pet Food Prod. Liab. Litig.,* 629 F.3d 333, 352-56 (3d Cir. 2010) (reversing settlement approval because parties provided inadequate information concerning the magnitude of defendants' potential liability); *In re Cendant Corp. Litig.,* 264 F.3d 201, 241-42 (3d Cir. 2001) (affirming settlement approval where district court found that a $3.2 billion settlement fund "represents a 36-37% recovery rate by the plaintiff Class");  *In re General Motors Corp. Pick-Up Truck Fuel Tank Litig.,* 55 F.3d 768, 806-07 (3d Cir. 1995); *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975) (following *Grinnell*).

[7] The *Krakauer* district court distinguished *Bridgeview Health Care Center Ltd. v. Clark*, No. 09 C 5601, 2013 WL 1154206, at *7–8 (N.D. Ill. Mar. 19, 2013) (Valdez, Mag. J.), *aff'd on other grounds*, 816 F.3d 935 (7th Cir. 2016), in which damages were not trebled because the defendant there was "a naïve small business" drawn into a marketer's ongoing illegal fax advertising practice, whereas the defendant Dish was a large business cognizant of the violations, requiring a large damages award to deter future misconduct. *Krakauer*, 2017 WL 2242952, at *12-13.

Supp. 3d 768, 771 (W.D.N.Y. 2016)).  Noting that an earlier $6 million fine had been insufficient motivation to change Dish's practices, the district court concluded that "[a] damages award that is an order of magnitude larger is warranted here." *Id*.

The *Krakauer* district court's direction to jurors that they could award "up to $500" appears to be error, given the statute's clear text authorizing "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater."  15 U.S.C. §227(b)(3)(B).  Thus, one could argue that the judgment in *Krakauer* ***should have*** been $1,500 per call, rather than $1,200 per call.  Still, conservatively assuming that the *NPAS* class of 180,000 persons received only three calls apiece, a $1,200-per-call verdict in this case would come to $216,000,000. Under *Reynolds,* even a one-percent chance of such a verdict is worth $2.16 million – approximately 50% more than the proposed settlement provides here.[8]

The foregoing scenarios assume that Plaintiff could succeed in demonstrating TCPA violations' willfulness – which seems quite likely, given both NPAS's repeated violations, and the relaxed standard for demonstrating willfulness of such statutory violations.  The Amended Complaint explains that NPAS "***routinely*** violates the TCPA by placing non-emergency telephone calls to consumers' cellular telephone numbers by using an automatic telephone dialing system or an artificial or prerecorded voice, without the prior express consent of the consumers, in that Defendant routinely dials wrong or reassigned telephone numbers that do not belong to the intended recipients of the calls." DE15 at 1-2. (emphasis added).

As the Seventh Circuit held in *Redman*, a statutory violation is deemed "willful" if it was merely "reckless" in the "civil law sense" that the danger of a violation was both obvious and easily avoidable:

---

[8] Plaintiff has not adequately explained why he believes he has less than a one percent chance of prevailing at trial, and why this settlement is reasonable in light of the strength of his case.

> To act "willfully" is, for purposes of civil law, to engage in conduct that creates "an unjustifiably high risk of harm that is either known or so obvious that it should be known," *Farmer v. Brennan,* 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) – reckless conduct, in other words, as held in *Safeco Ins. Co. of America v. Burr,* 551 U.S. 47, 56-60, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007), but reckless conduct in the civil sense. Criminal recklessness is generally held to require "knowledge of a serious risk to another person, coupled with failure to avert the risk though it could easily have been averted, *Slade v. Board of School Directors,* 702 F.3d 1027, 1029 (7th Cir.2012); see also Black's Law Dictionary 1298-99 (Bryan A. Garner ed., 8th ed.2004), "whereas in civil cases at common law it is enough that the risk, besides being serious and eminently avoidable, is obvious; it need not be known to the defendant." *Slade v. Board of School Directors*, supra, 702 F.3d [1027,] 1029 [(7th Cir. 2012)].

*Redman,* 768 F.3d at 627.

This case is therefore distinguishable from other cases, such as Fair Credit Reporting Act cases, in which a failure or inability to show willfulness would seriously impair the value of the case. *E.g., Berry v. Schulman,* 807 F.3d 600, 615 (4th Cir. 2015) (explaining that willfulness was a necessary predicate to entitlement to statutory damages under FCRA); *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14CV238(DJN), 2016 WL 1070819, at *4 (E.D. Va. Mar. 15, 2016) ("Without a finding of willfulness, Plaintiffs would have needed to establish actual damages and proceed on a uniform 'actual damages' claim. 15 U.S.C. §§ 1681n, 1681o. These actual damages would not realistically exceed the statutory damages.").

The $1.432 million Proposed Settlement does not begin to approach the boundaries of any reasonable valuation of the claims that Plaintiff seeks to compromise. The case should have settled for tens, or hundreds, of millions, or else been litigated further; the settlement proposed by the parties is patently inadequate.

C.     **The Court Should Consider Counsel's Lodestar in Determining
       a Reasonable Fee**

The Supreme Court's "common-fund" or "equitable-fund" cases have involved
fees calculated and assessed in a variety of ways.  The seminal common-fund decision,
*Trustees v. Greenough*, 105 U.S. 527 (1882), awarded itemized attorneys' fees actually
incurred (and paid) for specific tasks, without any kind of enhancement or multiplier.  *See
Greenough*, Transcript of Record at 711-23, 770-78 (original) 228-32, 247-56 (print).
Two subsequent decisions, *Central Railroad Banking Co. v. Pettus*, 113 U.S. 116 (1885),
and *United States v. Equitable Trust Co.*, 283 U.S. 738, 746-47 (1931), involved percent-
of-fund awards – with the Supreme Court in both cases slashing unreasonably high 10%
fee awards to a more reasonable 5% of the recovered fund.  In *Sprague v. Ticonic
National Bank*, 307 U.S. 161 (1939), the common-fund award appears again to have been
for fees actually incurred and paid for specific tasks just as in *Greenough*, for the record
on remand in *Sprague* reveals that the petition in that case sought reimbursement only for
fees actually billed by, and paid to, the lawyers.  *See Sprague v. Ticonic Nat'l Bank*, 28
F.Supp. 229, 231 (D. Me. 1939), *aff'd in relevant part and rev'd in part on other
grounds*, 110 F.2d 174, 178 (1st Cir. 1940) ("The decree of the District Court is affirmed
insofar as it allows the original petition for reimbursement in the amount of $1,214.51.").
Finally, in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), the Supreme Court
mandated a common-fund fee award, which the district court on remand honored the
Supreme Court's mandate by employing the lodestar methodology to calculate fees.  *See
Van Gemert v. Boeing*, 516 F. Supp. 412, 414, 418 (S.D.N.Y. 1981) (employing lodestar
methodology rather than percent-of-fund to calculate attorneys' fees: "'The starting point
of every fee award . . . must be a calculation of the attorney[s'] services in terms of the
time [they have] expended on the case.'") (quoting *City of Detroit v. Grinnell*, 495 F.2d
448, 470 (2d Cir. 1974)).

10

In light of the foregoing precedents, most circuits have concluded that district courts have discretion to choose between the lodestar methodology and percent-of-fund methodology in awarding attorneys' fees.  *See, e.g., Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 44-45 (2d Cir. 2000); *In re WPPSS Litig.,* 19 F.3d 1291, 1295 (9th Cir. 1994); *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 974 (7th Cir. 1991).  Decisions of the Eleventh Circuit and the District of Columbia Circuit, on the other hand, appear to mandate percentage fee awards in all common-fund cases.  *See Camden I Condominium Ass'n,* 946 F.2d 768, 773 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala,* 1 F. 3d 1261, 1265-71 (D.C. Cir. 1993).

Objector Dickenson respectfully submits that *Camden I* should no longer be deemed controlling law in light of the Supreme Court's intervening decision in *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542 (2010), which defines reasonable fee awards in terms of lodestar, and which repudiates the so-called "*Johnson* factors," *see id.* at 551-552, that *Camden I* holds should be "used in evaluating, setting, and reviewing percentage fee awards in common fund cases."  *Camden I,* 946 F.3d at 775.

Alternatively, Objector Dickenson respectfully submits if this Court is to award a percent-of-fund fee award, the percentage awarded should be in line with the 5% fees approved by the Supreme Court in both *Pettus* and *Equitable Trust.*  If ten percent fee awards were deemed excessive in those cases, then the 33⅓% fee award sought here surely is out of line with these controlling Supreme Court precedents on reasonable percentages for common-fund fee awards. In fact, economies of scale present in class actions such as this warrant a ***downward*** adjustment from the 5% fee deemed appropriate in *Pettus* and *Equitable Trust.*

**D.     The Proposed "Incentive Award" is Excessive and Precluded by Binding Supreme Court Authority**

In addition to an award of attorneys' fees, the plaintiff seeks a special individual award of $6,000.00.[9]   The so-called "Incentive Award" is to be deducted from the settlement fund, along with attorneys' fees, prior to calculation or distribution of awards to class members.[10]

"Since the decisions in *Trustees v. Greenough*, 105 U.S. 527 (1882), and *Central Railroad Banking Co. v. Pettus*, 113 U.S. 116 (1885)," American courts, both state and federal, have consistently recognized "that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Though a class representative's reasonable attorneys' fees may thus be reimbursed, the common-fund doctrine of *Greenough* and *Pettus* flatly prohibits any award for services that the class representative itself renders:  "The reasons which apply to his expenditures incurred in carrying on the suit, and reclaiming the property subject to the trust, do not apply to his personal services and private expenses." *Greenough*, 105 U.S. at 537.   "'It would present,' said Mr. Justice Bradley, speaking for the court, 'too great a temptation to parties to intermeddle in the management of valuable property or funds in which they have only the interests of creditors, and that, perhaps, only to a small amount, if they could calculate upon the allowance of a salary for their time and having all their private expenses paid.'" *Pettus,* 113 U.S. at 122 (quoting *Greenough,* 105 U.S. at 537-38); *see Granada Investments, Inc. v. DWG Corp.,* 962 F.2d 1203, 1207-08 (6th Cir. 1992) (applying *Greenough's* distinction between litigation expenses on the one hand, and "personal services and private expenses," on the other); *Crutcher v. Logan,* 102

---

[9] *See* Notice to Class Members; *Declaration of Jenna Dickenson,* Ex. 1

[10] Settlement Agreement § 11.2, DE37-1 at 23.

F.2d 612, 613 (5th Cir. 1939) (under *Greenough* and *Pettus* claimants interested in the fund itself can receive "no compensation for personal services"); *Gortat v. Capala Bros.,* 949 F. Supp. 2d 374, 379-80 (E.D.N.Y. 2013) (following *Greenough).*

The incentive award also is proscribed by Rule 23 principles. "Generally, when a person 'join[s] in bringing [an] action as a class action . . . he has disclaimed any right to a preferred position in the settlement.'" *Staton v. Boeing Co.,* 327 F.3d 938, 976 (quoting *Officers for Justice v. Civil Service Commission of the City and County of San Francisco,* 688 F.2d 615, 632 (9th Cir.1982); *accord, e.g., Bailey v. Great Lakes Canning, Inc.,* 908 F.2d 38, 42 (6th Cir. 1990); *Kincade v. General Tire Rubber Co.,* 635 F.2d 501, 506 (5th Cir. 1981); *Flinn v. FMC Corp.,* 528 F.2d 1169, 1175 (4th Cir. 1975). "Were that not the case, there would be considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Staton,* 327 F.3d at 976.

Where special side payments or incentive awards significantly exceed what absent class members can expect upon settlement approval they create "a patent divergence of interests between the named representatives and the class." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 959 (9th Cir. 2009); *see also Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1161 (9th Cir. 2013). "Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard.'" *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) (quoting *Weseley v. Spear, Leeds & Kellogg*, 711 F.Supp. 713, 720-21 (E.D.N.Y. 1989)).

Courts in this District have occasionally approved compensation paid to class representatives for services performed. *See, e.g., Pinto v. Princess Cruise Lines, Ltd.,* 513 F.Supp.2d 1334 (S.D. Fla. 2007); *see also, Allapattah Services, Inc. v. Exxon Corp.,*

454 F.Supp.2d 1185 (S.D. Fla., 2006) (1.3% of settlement fund to be divided among class members).  It is unlikely those courts realized such compensation might violate Supreme Court pronouncements.  "To the extent that incentive awards are common, they are like dandelions on an unmowed lawn—present more by inattention than by design." *Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.)*, 724 F.3d 713, 722 (6th Cir. 2013).  Additionally, the compensation in this case is hardly modest; it is many times what absent class members would receive from the settlement.   Thus, there is a "patent divergence of interests between the named representative and the class." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1161 (9th Cir.2013).

  Beginning around 1990, "awards for representative plaintiffs began to find readier acceptance," and orders "approving incentive awards proliferated" were within a decade thought "'routine'" in some district courts.  Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 U.C.L.A. L. REV. 1303,1310-11 & n.21 (2006).   The Seventh Circuit approved of them in *In re Continental Illinois Sec. Litig.*, 962 F2d 566, 571-72 (7th Cir. 1992) (dictum), overlooking the Supreme Court's "seemingly categorical rejection of recovery for the plaintiff's personal expenses." ALAN HIRSCH & DIANE SHEEHEY, AWARDING ATTORNEYS' FEES AND MANAGING FEE LITIGATION 80 (Federal Judicial Center, 2d ed. 2005).  Other courts have joined the Seventh in endorsing such awards, none of them acknowledging the stark conflict with *Greenough* and *Pettus. See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 975-77 (9th Cir. 2003).

There is no statutory, procedural, or equitable basis to support plaintiff's request and plaintiff did not allege that he was seeking an incentive award in the Amended Complaint.  But even if plaintiff were eligible for an "incentive" award in this case, he has not demonstrated that his "services" warrant a $6,000 payment.  Courts have required that plaintiffs "must justify an incentive award through 'evidence demonstrating the

quality of plaintiff's representative service'…" *Billinghausen v. Tractor Supply Co.*, 306 F.D.R. 245, 266 (N.D. Cal. 2015); *see also Continental Illinois Securities Litigation, Matter of*, 962 F.2d 566 (7th Cir. 1992).  Moreover, any award should not be significantly higher than the amount recovered by the individual class members.  *Willner v. Manpower, Inc.*, 2015 U.S. Dist. LEXIS 80967 *27-30 (E.D. Cal. 2015) (reducing a stipulated service award in consideration of "the proportionality between the incentive payment and the range of class members' settlement awards"); *see also Golba v. Dick's Sporting Goods*, 238 Cal. App. 4th 1251, 1270-71 (2015) (reducing a service award of $3,500 to $500 where class members were to receive between $10 and $30 each). Plaintiff's request for an incentive award should be denied.


Date:  March 19, 2018                                    Respectfully submitted,



                                         s/ John W. Davis
                                         _____
                                         John W. Davis (FL Bar No. 193763)
                                         john@johnwdavis.com
                                         Law Office of John W. Davis
                                         501 W. Broadway, Suite 800
                                         San Diego, CA  92101
                                         Telephone:  (619) 400-4870

## CERTIFICATE OF SERVICE

**CASE NO.** 9:17-CV-80393-ROSENBERG/HOPKINS

I hereby certify that on March 19, 2018, I filed the foregoing document and attachment with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document and any attachments are being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

Date:  March 19, 2018

s/ John W. Davis
John W. Davis