UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO.: 9:17-cv-80393-ROSENBERG/HOPKINS

CHARLES T. JOHNSON, on behalf of himself
and others similarly situated,

      Plaintiff,

vs.

NPAS SOLUTIONS, LLC,

      Defendant.

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## Table of Contents

Introduction ................................................................................................................................... 1

Summary of the Settlement ........................................................................................................... 2

Notice and Claims Administration ................................................................................................ 3

Argument ....................................................................................................................................... 4

    I.    The settlement satisfies all requirements and merits final approval. ................................... 4

        A.    The parties negotiated the settlement at arm's length after litigation. ............................ 5

        B.    NPAS Solutions' legal and factual defenses posed significant risks to Plaintiff's claims and those of Class Members. ........................................................................................ 6

        C.    The settlement falls well within the range of recovery for similar TCPA class actions. . 8

        D.    The parties reached the settlement after being fully apprised of the risks and uncertainties associated with it. ...................................................................................... 9

        E.    Class counsel support the settlement as fair, reasonable, adequate, and in the best interests of Class Members. ......................................................................................... 10

        F.    The lack of any exclusions, and that only one Class Member objected to the settlement, supports its final approval. ............................................................................................ 11

    II.    Distribution of notice satisfied due process requirements. ................................................ 11

Conclusion ................................................................................................................................... 12

Local Rule 7.1(a)(3) Certification ................................................................................................ 12

## Introduction

This case arises from autodialed calls that NPAS Solutions, LLC ("NPAS Solutions") is alleged to have made to wrong or reassigned cellular telephone numbers, which were intended for consumers alleged to owe health care-related debts. That is, Charles T. Johnson ("Plaintiff") alleged that NPAS Solutions violated the Telephone Consumer Protection Act ("TCPA") by placing autodialed calls to wrong or reassigned cellular telephone numbers assigned to persons different from those it was trying to reach and, as a result, NPAS Solutions did not have the call recipients' prior express consent to make such calls. NPAS Solutions denies any liability or that its practices violated the TCPA.

Following months of discovery and motion practice, the parties reached an agreement to resolve this class action. In short, the settlement calls for the creation of a non-reversionary, $1.432 million common fund, from which participating class members will be compensated. This Court preliminarily approved the settlement on December 4, 2017, authorizing the distribution of notice and claim forms to Class Members.[1] *Johnson v. NPAS Solutions, LLC*, No. 9:17-cv-80393, 2017 WL 6060778, at *3 (S.D. Fla. Dec. 4, 2017) (Rosenberg, J.).

Since then, and after direct mail and publication notice, as well as the creation of a dedicated settlement website, 9,543 Class Members submitted valid claims for their *pro rata* share of the settlement fund. After deducting the costs of notice and claims administration, attorneys' fees and expenses, and an incentive award to Plaintiff—which are subject to this Court's approval—each participating Class Member will receive approximately $79.33.[2] This per-

---

[1] The executed settlement agreement is found at ECF No. 37-1 at 8-67. Capitalized terms herein have the same definitions as in the settlement agreement.

[2] Plaintiff calculated this per-claimant recovery after deducting the requested attorneys' fees and expenses, and the incentive award Plaintiff requests, which are the subject of a separate

1

claimant recovery compares favorably to similar TCPA class action settlements that have garnered final approval.

Moreover, only one Class Member out of 179,642—less than 0.00056% of the class—objected to the settlement.[3] At the same time, no Class Members excluded themselves from the settlement. Given this excellent result, and considering the overwhelmingly favorable support for the settlement from Class Members, Plaintiff respectfully requests that this Court finally approve the settlement, and enter a final judgment and order in the form agreed to by the parties.

## Summary of the Settlement

The settlement agreement defines a class under Rule 23(b)(3) comprised of:

> All persons in the United States who (a) received calls from NPAS Solutions, LLC between March 28, 2013 and the date of preliminary approval that (b) were directed to a phone number assigned to a cellular telephone service, (c) for which NPAS Solutions' records contain a "WN" designation, and (d) were placed using an automatic telephone dialing system.

*Johnson*, 2017 WL 6060778, at *1 (preliminarily certifying class for settlement purposes).

The settlement requires NPAS Solutions to pay $1.432 million into a non-reversionary cash settlement fund, out of which the 9,543 valid claimants will be compensated *pro rata*. In exchange, Class Members will release their claims arising out of NPAS Solutions' use of an automatic telephone dialing system to place calls to Class Members' cellular telephones during the class period.

---

motion. The per-claimant recovery also factors in the cost of notice and administration, which is expected to be approximately $235,000. The per-claimant recovery may increase slightly if KCC Class Action Services, LLC ("KCC")—the Court-appointed settlement administrator—identifies any additional duplicate or fraudulent claims.

[3] The lone objection was filed by an attorney who is a known "serial objector" to class action settlements. Plaintiff responds to this objection through a separate filing.

2

### Notice and Claims Administration

KCC delivered the Court-approved notice to Class Members in accordance with this Court's preliminary approval order. *Johnson*, 2017 WL 6060778, at *2-*3. The successful claims rate demonstrates not only the effectiveness of the notice, but also Class Members' satisfaction with the settlement.

*Direct Mail Notice*: After performing reverse telephone number look-ups on the telephone numbers provided to it by NPAS Solutions as belonging to Class Members, KCC mailed more than 143,500 postcards, which included notice of the settlement and a detachable claim form, to potential Class Members. Declaration of Orlando Castillejos On Behalf of Settlement Administrator Regarding Notice, ¶¶ 3, 6, attached as Exhibit A. KCC re-mailed any notices returned undeliverable to forwarding addresses, where undeliverable postcards were returned with a forwarding address. *Id*., ¶¶ 8-9. For undeliverable postcards returned without a forwarding address, KCC performed advanced address searches to locate updated addresses, and re-mailed postcards to any updated addresses obtained. *Id*.

*Publication Notice*: To supplement the robust direct mail notice program, KCC caused summary notice to be published in the January 18, 2018 national edition of USA Today. *Id*., ¶ 7. KCC estimates that this notice reached 1.3% of adults 18 years of age and older. *Id*.

*Settlement Website*: KCC established and maintains a website dedicated to the settlement—www.JohnsonNPASSolutionsSettlement.com—that includes information pertinent to Class Members such as court filings, as well as answers to frequently asked questions. *Id*., ¶ 4. Class Members were able to file claims via the settlement website. *Id*. The website received 8,712 visitors. *Id*.

*Toll-Free Hotline*: KCC established and maintains a toll-free telephone number—(866) 650-4059—for Class Members to obtain information about the settlement, and to submit claims. *Id.*, ¶ 5. The toll-free telephone number received 1,733 calls. *Id.*

*Claims*: 9,543 Class Members submitted claims. *Id.*, ¶ 12. 7,167 did so by mail, 1,968 did so online, and 408 did so by telephone. *Id.*

*Exclusions*: No Class Members excluded themselves from the settlement. *Id.*, ¶ 10.

*Objections*: One Class Member objected to the settlement. ECF No. 42.

*Class Action Fairness Act Notice*: KCC served notice required by the Class Action Fairness Act, 28 U.S.C. § 1715. *Id.*, ¶ 2. No government official objected to the settlement.[4]

## Argument

**I.   The settlement satisfies all requirements and merits final approval.**

"Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be approved if the settlement is 'fair, reasonable, and adequate.'" *Melanie K. v. Horton*, No. 1:14-CV-710-WSD, 2015 WL 1799808, at *2 (N.D. Ga. Apr. 15, 2015) (quoting Fed. R. Civ. P. 23(e)(2)). As well, "[t]here is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Ass'n For Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002); *accord In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("In assessing the settlement, the Court must determine whether it falls within the

---

[4] In response to the CAFA notice, the California Department of Justice suggested that the parties add the following language to the proposed order of final approval: "Class Members are not precluded from addressing, contacting, dealing with, or complying with requests or inquiries from any governmental authorities relating to the issues raised in this class action settlement." The parties agreed to do so.

4

range of reasonableness, not whether it is the most favorable possible result in the litigation.") (internal citation omitted).

As this Court noted, "Federal courts have long recognized a strong policy and presumption in favor of class action settlements. The Rule 23(e) analysis should be informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *Gevaerts v. TD Bank*, No. 11:14-cv-20744-RLR, 2015 WL 6751061, at *4 (S.D. Fla. 2015) (Rosenberg, J.) (internal citation omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Each relevant factor supports the conclusion that the settlement here is fundamentally fair, adequate, and reasonable.

**A. The parties negotiated the settlement at arm's length after litigation.**

The parties' arm's-length settlement negotiations, which were greatly informed by mediation before the Honorable Diane M. Welsh (Ret.) of JAMS in a similar TCPA matter against two debt collection companies with the same ultimate corporate parent as NPAS Solutions, demonstrate the fairness of the settlement, and that the settlement is not a product of fraud or collusion. *See In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) ("The Court finds that the Settlement was reached in the absence of collusion, is the product of informed,

5

good-faith, arms'-length negotiations between the parties and their capable and experienced counsel, and was reached with the assistance of a well-qualified and experienced mediator[.]").

In addition, the parties' settlement discussions occurred after written discovery, after the Court denied NPAS Solutions' motion to strike Plaintiff's class action allegations, and after Plaintiff served his expert report. As a result, the parties—and counsel with extensive experience in TCPA litigation—were able to properly assess the strengths and weaknesses of their positions and evaluate the fairness of the settlement.

### B. NPAS Solutions' legal and factual defenses posed significant risks to Plaintiff's claims and those of Class Members.

"[T]he likelihood and extent of any recovery from the defendants absent . . . settlement" is an important consideration in assessing that settlement's reasonableness. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 314; *see also Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992) ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise.").

While Plaintiff strongly believes in his claims, NPAS Solutions vehemently disputes that it violated the TCPA. To that end, NPAS Solutions raised a host of defenses to Plaintiff's claims, including:

- The Federal Communications Commission's July 10, 2015 Declaratory Ruling and Order included a one-call safe harbor for calls made to reassigned cellular telephone numbers, like those at issue here. Because of this safe harbor, NPAS Solutions contended at the time of the settlement that it had a viable defense to many of the calls it made to Class Members;

- NPAS Solutions also contended that it maintains robust safeguards to ensure compliance with the TCPA. While NPAS Solutions vehemently disputes any liability, to the extent any violations did occur, NPAS Solutions would argue that any violation of the TCPA was unintentional and would not support increased statutory damages; and

6

- Plaintiff faced significant risks in obtaining class certification. In particular, because NPAS Solutions necessarily does not have the name and address of each person it called at a potentially wrong number (but does have the cellular telephone numbers it dialed), NPAS Solutions would argue that the class is not ascertainable. NPAS Solutions also would argue that individualized issues predominate (such as whether a call truly reached a wrong number or whether the call recipient had consented to being called by NPAS Solutions), and that a litigation class should not be certified for a host of additional reasons. Indeed, several courts in this Circuit have refused to certify TCPA class actions, making the likelihood of certification uncertain. *See, e.g.*, *Shamblin v. Obama for America*, No. 8:13-cv-2428-T-33TBM, 2015 WL 1909765, at *8 (M.D. Fla. Apr. 27, 2015); *Balthazor v. Central Credit Servs., Inc.*, No. 07-61822, 2012 WL 6725872, at *3-4 (S.D. Fla. Dec. 27, 2012).

While Plaintiff disputes each of NPAS Solutions' arguments and is confident in his positions, it is obvious that his likelihood of success in this case was, and remains, a real risk, separate and apart from the risk that exists in every case of losing at trial or on appeal. *See Gevaerts*, 2015 WL 6751061, at *7 ("Apart from the risks, continued litigation would have involved substantial delay and expense. The Plaintiffs would have been required to certify the class, face the prospect of interlocutory review of any Order granting class certification, summary judgment, a trial on the merits, and a post-judgment appeal. The uncertainties and delays from this process would have been significant. Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement cannot be seen as anything except a fair compromise.").

Accordingly, the settlement is eminently reasonable under the circumstances. *See Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982) (noting that the plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for the plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

### C. The settlement falls well within the range of recovery for similar TCPA class actions.

The settlement here—payment by NPAS Solutions of a non-reversionary, all-cash fund of $1.432 million—compares well on a per-class member basis with similar TCPA class action settlements that courts have recently approved. Indeed, the settlement fund amounts to nearly $8 for each of the 179,642 potential Class Members. *Accord Cross v. Wells Fargo Bank, N.A.*, Case 2:15-cv-01270-RWS, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75 per class member); *Markos v. Wells Fargo Bank, N.A.*, Case No. 1:15-cv-01156-LMM, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95 per class member); *Picchi v. World Fin. Network Bank*, No. 11-CV-61797-CIV-Altonaga/O'Sullivan (S.D. Fla.) ($2.63 per class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ($4.41 per class member); *Duke v. Bank of Am., N.A.*, No. 5:12-cv-04009-EJD (N.D. Cal.) ($4.15 per class member).

Moreover, participating Class Members will receive approximately $79 each, "which equals or exceeds the recovery in a typical TCPA class action." *See James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2017 WL 2472499, at *1 (M.D. Fla. June 5, 2017) (approving TCPA settlement where each claimant received approximately $81) (citing *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 944 (D. Minn. 2016) (approving a TCPA settlement that yielded $33.20 per claimant); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (approving a TCPA settlement that yielded $34.60 per claimant)).

The settlement, therefore, falls well within the range of approved recoveries in TCPA class actions—"a range which recognizes the uncertainties of law and fact in a particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 323; *see also id.* at 326 (A court "should consider the vagaries of litigation and compare the significance of immediate recovery by way of

8

the compromise to the mere probability of relief in the future, after protracted and expensive litigation.").

Furthermore, the settlement provides participating Class Members with substantial monetary relief, more than $79 each, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that class members have an interest in individually controlling the prosecution of separate actions). In other words, the settlement provides Class Members real monetary relief that most would likely never have pursued on their own.

Finally, that each participating Class Member will receive more than $79 is a substantial value in its own right. *See Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—significantly less than what participating Class Members will receive here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

> **D. The parties reached the settlement after being fully apprised of the risks and uncertainties associated with it.**

Courts consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1349 (internal quotation marks omitted). At the same time, "[t]he law is clear that early settlements are to be

9

encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Here, the litigation has been ongoing since March 2017. During that time, Plaintiff filed an amended complaint, and NPAS Solutions moved to strike his class allegations. The parties also engaged in significant written discovery, focused both on Plaintiff's individual claims, and on the claims of absent class members. Moreover, Plaintiff served the report of his expert witness, which focused on the ability to identify class members from NPAS Solutions' call records. The settlement was, therefore, consummated when the parties had a good view towards the strengths and weaknesses of their respective positions. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation."). Class counsel's assessment of the case was also informed by their extensive experience in TCPA class actions.

### E. Class counsel support the settlement as fair, reasonable, adequate, and in the best interests of Class Members.

"In a case where experienced counsel represent the class, the Court absent fraud, collusion, or the like, should hesitate to substitute its own judgment for that of counsel." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 691 (N.D. Ga. 2001) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.").

Here, class counsel—whose qualifications include substantial experience with TCPA class actions—firmly believe the settlement is fair, reasonable, and adequate, and in the best interests of Class Members. Class counsel also believe the benefits of the settlement far outweigh the delay

10

and considerable risk of proceeding to trial. *See Leverso*, 18 F.3d at 1530 n.6; *James*, 2017 WL 2472499, at *1 ("Sixth, the class counsel and the class representatives 'firmly believe the settlement is fair, reasonable, and adequate.'"); *Gevaerts*, 2015 WL 6751061, at *8 ("Class Counsel and the representative Plaintiffs believe that this Settlement is deserving of Final Approval, and the Court agrees.").

    F. **The lack of any exclusions, and that only one Class Member objected to the settlement, supports its final approval.**

As a result of the class notice, 9,543 Class Members submitted valid claims, while no Class Members excluded themselves and only one filed an objection. *See* Ex. A, ¶¶ 10, 12. This overwhelmingly favorable reaction to the settlement supports its approval. *See, e.g.*, *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575, at *6 (E.D. Cal. Oct. 31, 2012) ("The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("A low percentage of objections demonstrates the reasonableness of a settlement."); *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) ("The small number of opt-outs and objections, given the large number of claims filed, militates in favor of approval."); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members").

**II.**    **Distribution of notice satisfied due process requirements.**

"Rule 23 requires that notice to class members be the 'best notice practicable under the circumstances[.]'" *Lopez v. Hayes Robertson Grp., Inc.*, No. 1310004CIVMARTINEZGO, 2015 WL 5726940, at *6 (S.D. Fla. Sept. 29, 2015). But "even in Rule 23(b)(3) class actions, due process

11

does not require that class members actually receive notice." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) (collecting cases).

Distribution of notice here far exceeded this minimum standard. In particular, KCC used all reasonable efforts to provide direct mail notice to each Class Member. *See generally* Ex. A. This direct mail notice was supplemented by a publication notice program, which included publication in USA Today, a dedicated settlement website, and toll-free phone number. *Id.*

The resulting claims rate of more than 5.3% is in line with claims rates in other approved TCPA class action settlements, further supporting approval. *See, e.g.*, *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (claims rate of 1.9% for monetary portion of settlement); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14 C 190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) ("3.16% of the class[] filed a timely claim"); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (2.5% claims rate); *Michel v. WM Healthcare Solutions, Inc.*, No. 1:10-CV-638, 2014 WL 497031, at *4 (S.D. Ohio Feb. 7, 2014) ("a total response rate of 3.6%"); *Arthur v. SLM Corp.*, No. C10–0198 JLR, Docket No. 249 at 2–3 (W.D. Wash. Aug. 8, 2012) (claims rate of approximately 2%); *Grannan v. Alliant Law Grp., P.C.*, No. C10-02803 HRL, 2012 WL 216522, at *3 (N.D. Cal. Jan. 24, 2012) (claims rate under 3%).

## Conclusion

Plaintiff respectfully submits that the settlement—which requires NPAS Solutions to pay $1.432 million into an all-cash, non-reversionary fund—constitutes an excellent result for Class Members. And for the foregoing reasons, Plaintiff respectfully requests that this Court finally approve the settlement, and enter a final judgment and order.

## Local Rule 7.1(a)(3) Certification

Counsel for Plaintiff conferred with counsel for NPAS Solutions, and NPAS Solutions does not oppose the requested relief.

Dated: April 6, 2018

/s/ *Michael L. Greenwald*
Michael L. Greenwald
James L. Davidson
Jesse S. Johnson
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Telephone: 561.826.5477
Fax: 561.961.5684
mgreenwald@gdrlawfirm.com
jdavidson@gdrlawfirm.com
jjohnson@gdrlawfirm.com

Aaron D. Radbil
GREENWALD DAVIDSON RADBIL PLLC
106 E. 6th Street, Suite 913
Austin, TX 78701
Telephone: 512.322.3912
Fax: 561.961.5684
aradbil@gdrlawfirm.com

Class Counsel

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was electronically filed on April 6, 2018, via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record:

Maura K. Monaghan
Jacob W. Stahl
DEBEVOISE & PLIMPTON LLP

Martin B. Goldberg
Alan D. Lash
Lorelei J. Van Wey
Michael L. Ehren
LASH & GOLDBERG LLP

Counsel for Defendant

/s/ Michael L. Greenwald
Michael L. Greenwald

13